UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN EDWARD SMITH,

        Petitioner,

                               CASE NO. 2:17-cv-10306
v.                                HONORABLE VICTORIA A. ROBERTS

WILLIE O. SMITH,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner John Edward Smith, a state prisoner proceeding *pro se*, seeks a writ of

habeas corpus under 28 U.S.C. § 2254. Petitioner challenges two larceny convictions

on grounds that (1) the trial court abused its discretion by denying his motion to have his

arrest declared illegal, (2) his arraignment was unnecessarily delayed, (3) the

preliminary examination was untimely, and (4) the prosecutor violated discovery rules,

stand-by attorney contributed to the evidentiary error, and the trial court abused its

discretion when the evidentiary issue arose. The State filed an answer to the petition in

which it urges the Court to deny the petition on grounds that Petitioner's claims are

barred from review or meritless. For the reasons that follow, the Court denies the

habeas corpus petition and closes this case.

## I. Background

### A. The Charges, Conviction, Sentence, and Direct Appeal

In 2013, the Wayne County Prosecutor charged Petitioner with larceny from a

person, Mich. Comp. Laws § 750.357, and larceny in a building, Mich. Comp. Laws §

750.360.  The charges arose from allegations that Petitioner brushed against a sixty-seven-year-old man at a casino in Detroit, Michigan, removed a winning slot-machine ticket or voucher from the man's pocket, cashed the ticket for $450, and left the casino. The victim was playing the slot machines at the time, and he did not realize that the winning ticket had been removed from his shirt pocket until he was ready to leave the casino.  He then notified a security officer, and law enforcement authorities were informed of the incident.

On the following day, Detroit police officer Jeffrey Robert reviewed video surveillance tapes maintained by the casino.  He was able to identify Petitioner in the videotape because he was familiar with Petitioner.  Officer Robert or his partner subsequently notified Petitioner's parole officer, who asked Petitioner to report to her office.  Petitioner was arrested when he appeared at the parole agent's office.

Petitioner represented himself, with the help of standby counsel, at his jury trial in Wayne County Circuit Court. The prosecution witnesses were the victim, Officer Robert, and a video surveillance officer from the casino.

The victim identified Petitioner at trial as the person who approached him and brushed against him at the casino while he was playing the slot machines on the day in question.  Although he did not see Petitioner take the slot machine ticket from his pocket, he claimed that no one else was near him at the time and that he did not leave the machines from the time he put the winning ticket in his shirt pocket until he noticed that it was missing.  Officer Robert testified about his role in the investigation, and the

casino employee explained how the casino's surveillance videotape and machine records implicated Petitioner in the larcenies.

The only defense witness was Petitioner's former parole officer who testified that her office arrested Petitioner after a police officer called and informed her that Petitioner had engaged in felony behavior. The parole officer admitted that the victim's age may have been incorrectly reported to her as ninety, but she did not think that the police provided false information. She pointed out that the victim was, in fact, a senior citizen, and even though the police report showed the date of the incident as July 27, the probation-violation-violation report was not necessarily incorrect, because it stated that the incident occurred "on or about July 29th."

Petitioner's defense was that the prosecution had no evidence and that its case was "smoke and mirrors." He also stated to the jury during closing arguments that his arraignment and preliminary examination were not held in a timely manner and that he was initially accused of intimidating a ninety-year-old man on July 29, but he was actually talking to counselors in the Veterans' Hospital at the time. The jury deliberated the case for less than thirty minutes and found Petitioner guilty, as charged, of larceny from a person and larceny in a building.

On March 14, 2014, the trial court sentenced Petitioner as a habitual offender, fourth offense, to concurrent terms of nine to twenty years in prison for the larceny from a person and one to four years in prison for the larceny in a building. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence, *see People v. Smith*, No. 321099, 2015 WL 4635015 (Mich. Ct. App. Aug. 4, 2015), and on June 28, 2016,

the Michigan Supreme Court denied leave to appeal.  *See People v. Smith*, 499 Mich. 967; 880 N.W.2d 580 (2016).

### B.  The Habeas Petition and the State's Answer to the Petition

On January 31, 2017, Petitioner filed his habeas petition.  As noted above, the State argues in an answer to the petition that Petitioner's claims are barred from substantive review or meritless.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

A procedural default is not a jurisdictional bar to review of the merits of a claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Because Petitioner's claims do not warrant habeas relief, the Court bypasses the procedural-default analysis and proceeds directly to the merits of Petitioner's claims, using the following standard of review.

### II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to

show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "[o]nly an 'objectively unreasonable' mistake, [*White v. Woodall*, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips

through the needle's eye of § 2254." *Saulsberry v. Lee*, __ F.3d __, __, No. 17-6157, 2019 WL 4126667, at *2 (6th Cir. Aug. 30, 2019) (quoting *Richter*, 562 U.S. at 103). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Analysis

#### A. Petitioner's State-Court Motion to Declare his Arrest Illegal

Petitioner's first claim alleges that the state trial court abused its discretion and violated his constitutional rights by failing to examine evidence that he presented to the court in a pretrial motion to declare his arrest illegal. Petitioner argued at a hearing on his motion that the Detroit Police Department provided his parole officer with erroneous information that the Department had probable cause to arrest Petitioner.

According to Petitioner, Officer Robert falsely informed Petitioner's parole officer that Petitioner intimidated an elderly man and took money from the man without the man's permission on July 29, 2013. The police arrest report, however, states that Petitioner was arrested for a larceny that occurred at a casino on July 27, 2013. Petitioner maintained at the hearing on his pretrial motion that, after he informed his parole officer he had an alibi for July 29, 2013, the prosecution modified the charging document to state that the larcenies occurred on July 27, 2013. *See* 2/14/14 Mot. Tr. at 3-6. The trial court denied Petitioner's motion to declare his arrest illegal because Petitioner's alibi argument and the legitimacy of the charges were matters for the jury to decide. *Id.* at 5-6.

Petitioner contends in his habeas petition that the trial court failed to conduct an objective review of the evidence at the motion hearing, and if the trial court had reviewed the evidence, it would have noticed that Officer Jeffrey Robert made false statements to his probation officer to establish probable cause to arrest Petitioner without a warrant. The Michigan Court of Appeals found no merit in Petitioner's argument because, in its opinion, Officer Robert had probable cause to arrest Petitioner.

### 1. Clearly Established Federal Law

"The Supreme Court has made clear that the Fourth Amendment requires probable cause to arrest," *Evans v. Etowah, Tenn.*, 312 F. App'x 767, 771 (6th Cir. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)), but a state prisoner is not entitled to review of a Fourth Amendment claim if he had an opportunity for "full and fair consideration" or "full and fair litigation" of his claim in state court. *Stone v. Powell*, 428 U.S. 465, 489, 494 (1976). "[T]he Powell "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

Petitioner raised his Fourth Amendment claim in a state-court motion to declare his arrest illegal and to suppress evidence. *See* Defendant's Mot. to Have Arrest Declared Illegal and Evidence Suppressed (ECF No. 1, PageID. 147). Petitioner also raised his Fourth Amendment claim on appeal. The presentation of his claim to the state courts "suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570

(6th Cir. 2012) (stating that, because the petitioner had ample opportunities to present his claim in state court, he was precluded from obtaining habeas relief).

## 2. The Merits

Even if Petitioner's claim were cognizable on habeas review, the claim lacks merit. "To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). To determine whether an officer had probable cause for an arrest, the Court must

> "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, 124 S.Ct. 795, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243–244, n. 13, 103 S.Ct. 2317 (1983). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. ——, ——, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

The Michigan Court of Appeals correctly pointed out in Petitioner's case that,

> [p]rior to defendant's arrest, Officer Robert viewed the casino surveillance video that showed defendant taking a winning slot machine ticket voucher from an elderly man inside the casino. Officer Robert recognized defendant as the person taking the winning ticket voucher because Officer Robert had previously arrested defendant "for the same behavior which sent [defendant] to prison on his last prison term."

*Smith*, 2015 WL 4635015, at *2. The videotape and other evidence also established that Petitioner received $450.00 in cash for the voucher and then walked out of the casino without having used any of the slot machines.

The facts and circumstances within Officer Robert's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a reasonable person to conclude that Petitioner committed a larceny. Thus, there was probable cause to arrest Petitioner, and the state trial court's alleged failure to conduct an objective review of the evidence did not prejudice Petitioner.

Even if the police lacked probable cause to arrest Petitioner and Petitioner's arrest was illegal, an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Petitioner, therefore, has no right to relief on his claim that the trial court failed to follow the proper protocol when he moved to declare his arrest illegal.

## B. The Delay in Arraigning Petitioner

Petitioner's second claim alleges that there was an unnecessary delay in his arraignment. Petitioner was taken into custody without a warrant on July 30, 2013, but he was not arraigned until August 21, 2013. He contends that the delay of over twenty days in arraigning him was unjustifiable, because the courthouse was only a few miles

from where he was confined at the time and officers could have transported him to court. Petitioner also contends that interactive video equipment was available for use at the Re-Entry Center where he was confined if he could not get to court.  The Michigan Court of Appeals addressed Petitioner's claim on direct review, but rejected the claim because Petitioner was arrested on a parole violation, not criminal charges, and because he did not adequately address the merits of his claim or support his claim with legal authority and analysis.

In his habeas petition, Petitioner relies on *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), a case in which the Supreme Court noted that "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest."  *Id.* at 47 (citing *Pugh*, 420 U.S. at 103).  The Supreme Court explained in *McLaughlin* that, generally, a judicial determination of probable cause within forty-eight hours of arrest will comply with the promptness requirement.  *Id.* at 56.  In Michigan, when a person is arrested without a warrant, the "arraignment provides a *judicial* determination of probable cause which would not otherwise occur until the preliminary examination."  *People v. Mallory*, 421 Mich. 229, 239; 365 N.W.2d 673, 678 (1984) (emphasis in original).

Petitioner was arrested without a warrant and taken into custody on the probation-violation charges on July 30, 2013.  The state trial court's docket indicates that a warrant for Petitioner's arrest on the criminal charges was issued on August 5, 2013, and even though he was already in custody, he was not arraigned, or provided any other type of hearing on the criminal charges, until August 21, 2013.  *See* www.3rdcc.org (case inquiry

for case number 13-008431-01-FH).  However, a state prisoner generally is not entitled to habeas corpus relief on a Fourth Amendment claim if he had a full and fair opportunity to address the Fourth Amendment claim in state court, *Powell*, 428 U.S. at 494, and Petitioner had a fair and fair opportunity to raise his claim in state court.

Furthermore, "delay in arraignment, standing alone, without a showing of prejudice . . . present[s] no federal question." *Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969).  The delay in conducting Petitioner's arraignment was not extreme, and Petitioner's detention in the Re-Entry Center did not prejudice him because he was already in custody on the probation-violation charges.  Furthermore, the probation-violation report provided Petitioner with a factual basis for the criminal charges, and he did not make a confession while awaiting his arraignment.  In addition, because the physical evidence in the case was reviewed before Petitioner's arrest, there was no physical evidence to suppress due to the delay.

Although Petitioner alleges in his next claim that the combined delay in the arraignment and preliminary examination impaired his ability to find potential witnesses, he does not say who might have been available to testify in his behalf, what the witnesses would have said if they had testified, "or how his defense was prejudiced by their absence." *Wood v. Vasbinder*, 310 F. App'x 861, 865 (6th Cir. 2009). Petitioner has shown no prejudice from the delay and, therefore, he is not entitled to relief on his claim. *Kirkland v. Maxwell*, 369 F.2d 687, 688 (6th Cir. 1966).

**C. Delay in the Preliminary Examination**

Petitioner alleges next that the trial court erred by denying his motion to quash the charges based on a delay in conducting the preliminary examination. Petitioner was arraigned on August 21, 2013, and even though the preliminary examination initially was scheduled for September 3, 2013, Petitioner was not brought to court that day. *See* 9/17/13 Prelim. Examination Tr., at 4-5 (ECF No. 1, PageID. 97-98). The preliminary examination was postponed to September 17, 2013. Petitioner complained about the delay in commencing the preliminary examination, but because he had not filed a motion challenging the delay, the state district judge suggested that Petitioner work with standby counsel to file a motion at a later date. *See id.*, PageID. 98-99.

Petitioner subsequently filed a motion to quash the charges due to the delay in conducting the preliminary examination. The trial court denied the motion, and even though Petitioner raised the issue on appeal, neither the Michigan Court of Appeals, nor the Michigan Supreme Court directly addressed the issue on the merits.[1]

---

[1] The Michigan Court of Appeals treated the Petitioner's claim as one of judicial bias. The Court of Appeals stated that,

> [t]o the extent defendant argues that the trial court's denial of his motion to suppress evidence and two motions to quash amounts to judicial bias, there is no indication of deep-seated favoritism or antagonism such that the exercise of fair judgment was impossible. Therefore, since the judicial ruling denying defendant's motion is not enough to allege a judicial bias, defendant cannot overcome the heavy presumption of judicial impartiality.

*Smith*, 2015 WL 46535015, at *4.

Accordingly, this Court addresses the issue *de novo*.[2]

Under state law, a defendant is "entitled to a prompt preliminary examination." Mich. Ct. Rule. 6.110(A). "Unless adjourned by the court, the preliminary examination must be held on the date specified by the court at the arraignment on the warrant or complaint." Mich. Ct. R. 6.110(B)(1).

> A magistrate may adjourn a preliminary examination for a felony to a place in the county as the magistrate determines is necessary. . . . An adjournment, continuance, or delay of a preliminary examination may be granted by a magistrate without the consent of the defendant or the prosecuting attorney for good cause shown.

Mich. Comp. Laws § 766.7.

Petitioner alleges that there was no "good cause" for the delayed preliminary examination because he was in custody at the time, and officers could have transported him to court or conducted the examination by using available interactive video equipment. However, the alleged violation of state law is not a basis for habeas relief because "federal habeas corpus relief does not lie for errors of state law." *Lewis v.*

---

[2] AEDPA, "by its own terms is applicable only to habeas claims that were 'adjudicated on the merits in State court . . . .' " *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (quoting 28 U.S.C. § 2254(d)). When, as in this case,

> the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001) (applying pre-AEDPA standards to a habeas petition filed pursuant to § 2254 because "no state court reviewed the merits of [the] claim"). Instead, this court reviews questions of law and mixed questions of law and fact de novo. *Id.*

*Id.*

*Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Furthermore, there is no constitutional right to a preliminary examination for the purpose of determining probable cause. *Pugh*, 420 U.S. at 123, 125 n.26; *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965); *see also People v. Johnson*, 427 Mich. 98, 103; 398 N.W.2d 219, 221 (1986) (noting that "[t]here is no federal constitutional right to a preliminary examination or hearing" and that, "[i]n Michigan, the preliminary examination is solely a creation of the Legislature – it is a statutory right"). Thus, the alleged failure to conduct a prompt preliminary examination is not a basis for habeas corpus relief. The alleged "error raises only matters of state law and procedure and involves no federal question of fundamental fairness or constitutional protection." *Oliphant v. Koehler*, 451 F. Supp. 1305, 1307 (W.D. Mich. 1978).

Petitioner argued in his state-court motion to quash that the delay in conducting the preliminary examination impaired his ability to establish a defense strategy, find potential witnesses, and recollect the events on the day in question. He also alleged that the delay caused irreparable damage to his personal relationships with family and friends. *See* Brief in Support of Mot. to Quash (ECF No. 1, PageID. 70). The delay, however, was relatively short (twenty-six days from the arraignment to the preliminary examination), and Petitioner was informed of the facts and the date of the criminal incident in the parole-violation report, which was given to him on July 30, 2019. *See* Parole Violation Report (ECF No. 1, PageID. 25). Therefore, the contention that

Petitioner's defense strategy and personal relationships were impaired by the delay in the preliminary examination is not tenable, and Petitioner is not entitled to relief on his claim.

### D.  The Casino Evidence, the Prosecutor,
###      the Trial Court, and Standby Counsel

In his fourth and final claim, Petitioner alleges that the prosecutor violated discovery rules and procedures when it admitted in evidence the casino's surveillance videotape, the victim's player-activity log, and a computer printout showing that the slot-machine ticket was cashed.  Petitioner also contends that the prosecutor and standby counsel agreed to admit the surveillance videotape in Petitioner's absence.  Finally, Petitioner contends that the trial court abused its discretion by not reviewing the evidence or inquiring into the authenticity and trustworthiness of the evidence.

Petitioner raised his concerns about the evidence at trial.  He questioned the difference between two player-activity logs, and he initially objected to the surveillance videotape because he thought it differed from the one provided to him in the discovery package.  He also maintained that the computer printout was not an adequate substitute for the original slot-machine ticket, which was not admitted in evidence.  Although the trial court permitted Petitioner to ask the casino employee why the employee did not retrieve the slot-machine ticket, see 2/25/14 Trial Tr. at 82-83, the trial court admitted the videotape over Petitioner's objection, *see* id. at 45.  The court also limited Petitioner's cross-examination of the casino employee about the player-activity reports.  *See id.* at 75-76.

Petitioner raised his claims on appeal, but the Michigan Court of Appeals disagreed with his arguments and rejected his claim. The Court of Appeals ruled that: (1) the trial court did not abuse its discretion by admitting the surveillance videotape in evidence because the videotape was authenticated by an employee of the casino; and (2) Petitioner abandoned his claim about the computer printout by giving cursory treatment to the issue and by not providing any authority for his claim or citing to the record. The Court of Appeals determined that Petitioner abandoned his claims about the prosecutor and that he failed to show any prosecutorial misconduct. Finally, the Court of Appeals found no merit in Petitioner's claim about his standby attorney, because Petitioner chose to represent himself at trial, and his standby counsel was not acting as his lawyer throughout the proceedings.

## 1. The Prosecutor

Petitioner's contention that the prosecutor violated the Michigan Court Rules and the Michigan Rules of Evidence lacks merit, because the Court "may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Furthermore, there is no indication in the state-court record that the prosecutor admitted false evidence or any evidence that differed from the evidence provided to the defense in the discovery package. There also is no evidence that the prosecutor negotiated with standby counsel in Petitioner's absence or engaged in "improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). Petitioner's prosecutorial-misconduct claim, therefore, fails.

## 2. The Trial Court

The contention that the trial court failed to adequately review or address the evidence before admitting it also lacks merit. A state court's error in state procedure or evidentiary law does not rise to the level of a constitutional violation "unless the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

The Michigan Court of Appeals determined that the evidence in dispute here was properly admitted. The Court of Appeals stated that the surveillance videotape was properly authenticated when the casino employee testified that there were no differences between the original video and the copy made by his supervisor. The Court of Appeals stated that the computer printout did not violate the "best evidence rule" of the Michigan Rules of Evidence because the rule applies only when the contents of a writing are at issue, and the content of the slot machine ticket was not at issue. The Court of Appeals also found no merit in Petitioner's claim about the victim's player-activity log, because there was no indication that the prosecutor knowingly admitted a false log or that he admitted a different log than the one provided to Petitioner in the discovery package.

The state court's interpretation of state law binds this Court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because the disputed evidence was admissible under state law, it was not fundamentally unfair or a violation of due process to admit the evidence. Petitioner, therefore, has no right to relief on his claim about the trial court.

### 3. Standby Counsel

Petitioner alleges that standby counsel was ineffective because she agreed with the prosecutor to admit a copy of the surveillance videotape in his absence.

The Supreme Court has held that "the right to personal presence at all critical stages of the trial ... [is a] fundamental right[ ] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983).

> Nevertheless, [a] defendant's right to be present is not all-encompassing or absolute. Indeed, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *United States v. Gagnon*, 470 U.S. [522, 526–27 (1985)]. Moreover, this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. 97, 106–107, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

*United States v. Gallagher*, 57 F. App'x 622, 626 (6th Cir. 2003).

Petitioner has failed to establish that he was actually absent when his standby attorney worked out an agreement with the prosecutor on what videotape to admit in evidence. Petitioner initially objected to having the videotape played for the jury because he questioned its authenticity and because he was not sure that the videotape was the same as the videotape provided to him in the discovery package. The trial court overruled the objection because the objection went to the weight of the evidence, not its admissibility. *See* 2/25/14 Trial Tr. at 45.

Standby counsel for Petitioner then asked to approach the bench, and when the court denied the request, standby counsel apparently asked the prosecutor whether the videotape which the prosecutor intended to play for the jury was the same videotape that she and Petitioner possessed. The trial court wanted to know what the attorneys were

doing, and Petitioner said, "I can tell you." *Id.* at 45-45. He did not have a chance to explain what was happening because the prosecutor promptly informed the trial court that standby counsel had inquired whether the videotape was the same one she had. *Id.* at 46. The trial court stated that it had already admitted the tape over objection, but because the prosecutor was unable to make the video machine work, the trial court announced a break in the proceedings, and the jury was excused at 10:12 a.m. *Id.*

At 10:35 a.m., a separate record was made on an unrelated issue in the jury's absence. *Id.* at 47. When the discussion on the unrelated issue concluded, standby counsel informed the trial court that Petitioner was concerned about the surveillance videotape being the same one that she and Petitioner had previously watched together. Standby counsel went on to say that the prosecutor had agreed to play the videotape that was provided to counsel in the discovery package. *Id.* at 47-48.

The jury re-entered the courtroom at 10:36 a.m., and the prosecutor said, "[W]e're not all here." The court clerk responded, "Yeah, we're all here," and the trial court instructed the prosecutor to "[g]o ahead." *Id.* at 49. The prosecutor then explained that he and standby counsel had agreed to use the copy of the videotape that was provided to standby counsel. *Id.* Petitioner did not say anything at that point, and the videotape was played for the jury.

The record fails to show that Petitioner was absent during any of the proceedings summarized in the previous four paragraphs. Thus, Petitioner's claim that standby counsel violated his right to be present during a discussion about the surveillance videotape lacks merit.

Even if Petitioner was absent during the attorneys' discussion about the videotape, his right to a fair and just hearing was not thwarted by his absence, because the prosecutor and standby counsel ultimately agreed to use the videotape that the prosecution provided to Petitioner and standby counsel. In addition, Petitioner himself used the videotape when cross-examining the casino's videotape surveillance employee. *See* 2/25/14 Trial Tr. at 74.

To the extent Petitioner claims that standby counsel was ineffective for other reasons, his claim fails. As explained by the Sixth Circuit Court of Appeals,

> [b]y exercising his constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel. *See Faretta [v. California*, 422 U.S. 806, 834 (1975)]. Logically, a defendant cannot waive his right to counsel and then complain about the quality of his own defense. *Id.* at 834 n. 46, 95 S.Ct. 2525; *Gall v. Parker*, 231 F.3d 265, 320 (6th Cir. 2000).

*Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009).

"Even if standby counsel failed to act in some manner, such failure is an incidental effect of [Petitioner's] decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim." *Holmes v. United States,* 281 F. App'x 475, 480–81 (6th Cir. 2008) (citing *Wilson*, 515 F.3d at 697). The Court will not impose on stand-by counsel the same obligations that an attorney would have if Petitioner had not been proceeding *pro se. Id.* Petitioner, therefore, has no right to relief on his claim about standby counsel.

## IV.  Conclusion

For the reasons given above, the state appellate court's adjudication of Petitioner's claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Furthermore, Petitioner's claim about the preliminary examination, which this Court reviewed *de novo*, lacks merit.  Accordingly, the Court denies the petition for writ of habeas corpus.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims; nor could reasonable jurists conclude that the claims deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Nevertheless, if Petitioner chooses to appeal this decision, he may proceed *in forma pauperis on* appeal because he was granted pauper status in this Court, and an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).


                                        s/ Victoria A. Roberts
                                        VICTORIA A. ROBERTS
Dated: 9/26/19                          UNITED STATES DISTRICT JUDGE